NOT FOR PUBLICATION                                                [13]


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LUTICIA HAWTHORNE, | : | Civil Action No. 03-5465 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN E. POTTER, *POSTMASTER* | : | |
| *GENERAL*, | : | |
| Defendant. | : | |

_____


**APPEARANCES:**

For Plaintiff:
      Ian Stuart
      The Stuart Law Office
      83 East Lake Dr.
      Audubon, NJ 08106-1756

For Defendant:
      J. Andrew Ruymann
      U.S. Attorney's Office
      402 East State St.
      Suite 430
      Trenton, NJ 08608


**WOLFSON, District Judge**

Presently before the Court is a Motion for Summary Judgment by Defendant, John E.

Potter, relating to the Complaint of Plaintiff, Lucretia Hawthorne ("Hawthorne"), a United States

Postal Service ("USPS") employee.  Plaintiff contends that she was subject to employment

discrimination when she was denied a 204B position[1], a temporary supervisor position at the

Trenton General Mail Facility, in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-16 and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.[2]  Defendant, the

USPS, filed a Motion for Summary Judgment alleging the existence of legitimate, non-

discriminatory reasons for denying Plaintiff the 204B position.  The Court has considered the

moving, opposition and reply papers, and for the reasons set forth below, Defendant's Motion for

Summary Judgment will be granted.


I.     BACKGROUND

       Plaintiff, an African American, began working at the USPS as a casual letter carrier in

1993.  Plaintiff's responsibilities included casing, sorting and delivering mail. Hawthorne

Transcript ("Transcr.") 21:1-22:7.  In 1994, Plaintiff was promoted to the position of transitional

employee performing the same responsibilities as a casual letter carrier.  In July 1994, Plaintiff

became a part-time flexible letter carrier, and, in early 1995, Plaintiff became a full-time letter

carrier.  Id. at 22-25.

_____

       [1]To the extent that Plaintiff alleges other discriminatory actions taken by the USPS,
Plaintiff has not exhausted her administrative remedies and these actions are not properly before
this Court.

       [2]In the complaint, Plaintiff alleges that the instant action violated the Americans with
Disabilities Act (ADA).  However, federal law expressly precludes the application of the ADA to
the United States by limiting the definition of "employer" and excluding from this definition the
United States or any corporation owned by the federal government.  42 U.S.C. §12111(5)(B)(I).
Instead, federal employers, such as the USPS, and other employers who receive federal funding
are prohibited from discriminating against individuals with disabilities pursuant to the
Rehabilitation Act.  29 U.S.C. §701 et seq.  Thus, the Court will construe the instant Complaint
as being brought pursuant to the Rehabilitation Act.

Sometime between 1995 and 1997, Plaintiff suffered a back injury as a result of her duties as a letter carrier.  Id. at 26:16-20.  Although Plaintiff's initial injury improved and she returned to work, in 1998 Plaintiff suffered an additional injury to her left shoulder and she was placed on limited duty status.  Id. at 27-28.  Plaintiff remained on limited duty status from 1998 to 2000.  During this time, Plaintiff worked full-time, 40 hours a week at the downtown Trenton postal station performing various functions that fell within her limitations. Id. at 29-32.

In July 2000, Plaintiff was transferred to the Trenton General Mail Facility ("Trenton GMF") in Hamilton, New Jersey.  Id. at 34:21-24.  Between July 2000 and December 2001, Plaintiff's back and shoulder injuries continued to prevent her from performing the full duties of a letter carrier; however, Plaintiff was able to work full-time in a limited duty capacity at the Trenton GMF.  Id. at 34:21 -25:10.   Moreover, despite Plaintiff's back and shoulder injuries, Plaintiff was able to care for herself, drive, walk and do household chores such as laundry and cleaning.  Id. at 111:23-113:20.  In addition, Plaintiff's injuries did not affect her ability to speak, read, think or eat.  Id.

In January 2001, while Plaintiff was working in a limited duty capacity at the Trenton GMF, she approached her supervisor, Thomas Wagner ("Wagner"), about the possibility of receiving an assignment as a 204B supervisor[3].  Id. at 46.  In response to her request, Wagner described the selection process for choosing 204B supervisors.  Specifically, Wagner explained that decisions regarding promotions involve the consideration of three factors: work performance, attendance and safety.  Wagner Transcr. 12:8-15.  Moreover, Wagner informed

---

[3] A 204B supervisors is an individual who fills in as an acting supervisor on an as needed basis when the supervisory staff is short handed.

3

Plaintiff that he typically considers an employee's attitude as part of these factors, and he advised Plaintiff that he was concerned about her attitude, attendance and work restrictions.  Id.; Hawthorne Transcr. 47:7-1.  Finally, Wagner suggested that Plaintiff write a letter of interest for his consideration.  Id. at 48:1-4.

On March 15, 2001, Plaintiff wrote an initial letter to Wagner detailing her interest in the position.  Plaintiff received no response from Wagner.  On March 29, 2001, Plaintiff wrote a second letter explaining her interest in the position.  On March 30, 2001, Plaintiff contacted an EEO counselor about her non-selection to a 204B position.  Ruymann Certification ("Ruymann Cert."), Hawthorne Transcr., Ex. D-5.   On April 6, 2001, Plaintiff met with Wagner about the position.  At that time, Wagner informed her that he had decided not to select Plaintiff for a 204B position.  Plaintiff alleges that Wagner's decision was based, in part, on her race and her disability.  Wagner, on the other hand, alleges that Plaintiff was deficient in work performance and attendance.  Wagner Trans. at 12-13. Wagner attests that Plaintiff's limited duty status was only a minor factor in his decision not to select plaintiff for a 204B assignment, but that Plaintiff's "attitude and her work approach" were the predominant reasons why he did not select her for the job.  Id. at 21.   Moreover, Wagner testified that based on his own observations and information from Plaintiff's immediate supervisor, Plaintiff was often late or absent from work. Id. at 20, 24.  Moreover, instead of offering Plaintiff the 204B position, Wagner testified that he had recommended a white male and an African American male for the positions based on their work records.  Ruymann Cert., Ex. 4, USPS EEO Investigative Affidavit of Thomas Wagner. Similarly, Steve Kubala ("Kubala"), Wagner's supervisor, also recommended an African American male and two African American females for promotions and the available 204B

4

positions.  Ruymann Cert., Ex. 5, USPS EEO Investigative Affidavit of Steve Kubala.

After a settlement between Plaintiff and the USPS failed, the USPS issued a final pre-complaint letter on April 19, 2002 regarding Plaintiff's non-selection for a 204B assignment.  On May 29, 2002, Plaintiff filed a formal EEO Complaint.  On June 25, 2002, the USPS issued an Acceptance of Complaint to Plaintiff notifying her that the issues to be investigated were Plaintiff's discrimination claims based on race, gender and disability, as well as a claim for retaliation based on the USPS's refusal to promote Plaintiff to a 204B position on April 6, 2001.  The USPS issued a final decision on this matter on August 18, 2003,  finding that Plaintiff had failed to establish a prima facie case of discrimination on any basis, that management had advanced legitimate nondiscriminatory reasons for Plaintiff's non-selection to a 204B assignment and that there was no evidence suggesting that these reasons were pretextual.  Plaintiff filed a Complaint in this Court on November 17, 2003.  Following the completion of discovery, Defendant filed the instant Motion for Summary Judgment.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To show that a genuine issue of material fact exists, the nonmoving party may not rest upon mere allegations, but must present actual evidence in support

thereof.  Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290

(1968)).  In evaluating the evidence, the Court must "view the inferences to be drawn from the

underlying facts in the light most favorable to the [nonmoving] party."  Curley v. Klem, 298 F.3d

271, 276-77 (3d Cir. 2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999)).

Conclusory allegations do not meet the non-moving party's duty to set forth specific facts

showing that a genuine issue of material fact exists and a reasonable factfinder could rule in its

favor.  Ridgewood Board of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).


### B.     Title VII

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, serves as the exclusive

remedy for USPS employees who allege race discrimination in the workplace. Robinson v.

Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997). To succeed on a claim of race discrimination, a

claimant must establish that she was the subject of purposeful discrimination.  Weldon v. Kraft,

Inc., 896 F.2d 793, 796 (3d Cir. 1990).  Absent direct evidence, a plaintiff may prove intent

through the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),

and refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).  To

establish a prima facie case of discrimination, Plaintiff must show: (1) that she is a member of a

protected group; (2) that she is qualified for the position; (3) that she was subject to an adverse

employment action; and (4) that other similarly situated individuals not in the protected group

received better treatment. See Burdine, 450 U.S. at 254; Reeves v. Sanderson Plumbing

Products, Inc., 530 U.S. 133, 142 (2000). By establishing a prima facie case of discrimination, a

claimant creates a rebuttable presumption that an employer unlawfully discriminated against her.

6

An employer may dispel this inference by producing evidence of legitimate non-discriminatory reasons for its actions. <u>United States Postal Service Board of Governors v. Aikens</u>, 460 U.S. 711, 714 (1983).  However, this burden does not involve a credibility assessment; thus an employer needs only to articulate reasons, and not to prove their validity. <u>Reeves</u>, 530 U.S. at 142-43.  Once an employer meets this burden, a plaintiff has the opportunity to establish, by a preponderance of the evidence, that the employer's proffered reasons are pretextual. <u>Id.</u>  Thus, a  plaintiff who has established a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).

In the instant matter, Plaintiff alleges that as a result of her race she was denied a promotion to a 204B position[4]. Defendant, on the other hand, argues that Plaintiff cannot establish a prima facie case of discrimination under Title VII.  The Court agrees.

Initially, the court notes that Plaintiff meets two of the four <u>Burdine</u> elements to establish a prima facie case of discrimination.  Plaintiff meets the first prong because she is African American, and therefore, a member of a protected group.  In addition, Plaintiff meets the third prong because she was not chosen for a 204B assignment.  However, Plaintiff has not established that she is qualified for the position and that similarly situated employees, not in the protected

---

[4]The Court notes that although Plaintiff alleged a claim of race discrimination in her initial Complaint, Plaintiff's Opposition Brief focuses solely on the disability discrimination claim.  Despite Plaintiff's failure to address or refute the Defendant's arguments in their Motion for Summary Judgment, the Court will fully address the claims of race discrimination.

group, received better treatment.  Specifically, Plaintiff has the burden of demonstrating that she is able to perform the duties of a 204B supervisor.  However, Plaintiff has not put forth any evidence about the various responsibilities of a 204B supervisor, nor has she put forth any evidence to show that she is qualified for this position.  Moreover, Wagner recommended an African American employee for the 204B position and his supervisor, Kubala, recommended three African American employees for various promotions at that time including the 204B position.  Thus, even though one white person got promoted, several African Americans also got promoted; therefore, Plaintiff cannot demonstrate the "inference of unlawful discrimination" necessary to establish a prima facie case of discrimination under Title VII..  <u>Burdine</u>, 450 U.S. at 253.

However, even if Plaintiff could somehow establish a prima facie case of discrimination, Defendant has proffered substantial, non-discriminatory reasons for not promoting Plaintiff to a 204B position.  Specifically, Plaintiff's employer testified that Plaintiff's attitude, work approach, lateness and absenteeism were the predominant reasons why he didn't select her to be a 204B.  Indeed, Plaintiff has not put forth any evidence to suggest that the employer's articulated reasons are not believable or that an invidious discriminatory reason was more likely than not a motivating cause of the adverse employment action.  Thus, Plaintiff's complaint alleging racial discrimination cannot survive the instant Motion for Summary Judgment. <u>See</u> <u>Fuentes</u>, 32 F.3d at 764.

In addition to a claim of race discrimination, Plaintiff alleges that she was subject to retaliation under Title VII.  To establish a prima facie case of retaliation, a claimant must demonstrate that: (1) she engaged in protected activity; (2) an employer took adverse

employment action against her; and (3) that a causal connection exists between the protected activity and the adverse employment action.  EEOC v. L.B. Foster Co., 123 F.3d 746, 754 (3d Cir. 1997).  Although a causal connection between the protected activity and the adverse action may be inferred if they occur in close temporal proximity, timing alone will not suffice to prove retaliatory motive. Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991) (holding that although the timing of an adverse employment action "may suggest discriminatory motives. . . [the Third Circuit] stopped short of creating an inference based upon timing alone.").  Indeed, in Quiroga, the Third Circuit held that because the District Court specifically determined that the employer's decision to terminate the plaintiff was not caused by the plaintiff's discrimination claims or his threats to sue, the plaintiff could not establish the causal connection based on temporal proximity. Id. at 501.

In the instant matter, Plaintiff has successfully demonstrated that she engaged in a protected activity when she contacted an EEO Counselor about the 204B position on March 30, 2001.  In addition, Plaintiff clearly suffered an adverse employment action when she was denied the 204B position on April 6, 2001.  However, despite Plaintiff's ability to establish the first two elements, she has not established a causal connection between the protected activity and the adverse action.  Indeed, although the employer refused to promote Plaintiff seven days after her meeting with the EEO Counselor, and thus, these events occurred in close temporal proximity, Plaintiff has not put forth any additional evidence of a causal connection.   Therefore, under Quiroga, Plaintiff has not established a prima facie case of retaliation.

Moreover, once a claimant establishes a prima facie case of retaliation, the burden shifts to the defendant to advance a non-discriminatory, legitimate reason for discharging plaintiff.

9

Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).  Therefore, even if Plaintiff could

establish a prima facie case of retaliation, Plaintiff has not offered any evidence to show that

defendant's proffered reasons for not recommending plaintiff for the 204B position – namely her

attitude, tardiness, work performance –  were discriminatory or pretextual.  See Jalil v. Avdel

Corp., 873 F.2d 701, 708 (3rd Cir. 1989).  For these reasons, Plaintiff's Complaint cannot survive

Defendant's Motion for Summary Judgment on her Title VII retaliation claim.


### C. The Rehabilitation Act

In addition to her claims of race discrimination, Plaintiff alleges that she was denied

placement as a 204B supervisor because of her back and shoulder injuries.  The Rehabilitation

Act of 1973 prohibits federal employers and employers who receive federal funding  from

discriminating against disabled individuals in matters of hiring, placement or advancement.  29

U.S.C. § 701 et. seq.; see Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996).  Generally,

courts analyze Rehabilitation Act claims using the same standards that apply to claims arising

under Title I of the ADA.   29 U.S.C.  § 791(g) ("The standards used to determine whether . . .a

complaint alleging non-affirmative action employment discrimination under this section shall be

the standards applied under title I of the Americans with Disabilities Act of 1990.").  To succeed

on a disability discrimination claim pursuant to the Rehabilitation Act, a plaintiff "must make a

prima facie showing that reasonable accommodation is possible" by demonstrating : (1) that she

has a disability; (2) that she is otherwise qualified to perform the essential functions of the job

with or without accommodation; and (3) that she was nonetheless terminated or otherwise

prevented from performing the job. See Shiring, 90 F.3d at 831.

The initial inquiry for a Court under the three-prong test is whether a Plaintiff has a "disability" as defined under the Rehabilitation Act.  Generally, a "disability" is defined as a physical or mental impairment.  <u>Toyota Motor Manufacturing, Kentucky, Inc. V. Williams</u>, 534 U.S. 184, 194 (2002).  However, "merely having an impairment does not make one disabled"; claimants must also demonstrate that the impairment substantially limits a major life activity.  <u>Id</u>. at 195.  To qualify as substantially limiting, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  <u>Id</u>. at 198.  In the instant matter, Plaintiff alleges that her back and shoulder injuries[5] qualify as disabilities under the Rehabilitation Act.  Plaintiff contends that because of her injuries and her inability to lift more than 10 pounds, she was not been able to perform the full duties of a full-time letter carrier and was assigned to a limited duty status.  Thus, Plaintiff argues that her disabilities represent a substantial impairment of a major life activity under the Rehabilitation Act.  This Court, however, does not agree.

First, the Court notes that the Third Circuit has held that an employee's inability to lift more than ten pounds does not constitute a "substantial limitation" on a major life activity as required to establish an ADA claim.  <u>Marinelli v. City of Erie</u>, 216 F.3d 354, 364 (3d Cir. 2000); see <u>Carter v. Potter</u>, 2004 WL 2958428 at *3-4 (E.D. Pa. 2004).   Moreover, although Plaintiff was limited from performing the full duties of a letter carrier between July 2000 and December

---

[5]Although Plaintiff has also filed additional Worker's Compensation claims for posttraumatic stress disorder (PTSD) and other conditions, <u>see e.g.</u> Hawthorne Transc. 114-117, these health conditions arose subsequent to the adverse employment action here. Thus, the only relevant disabilities for Plaintiff's claims in the instant matter are the back and shoulder injuries that kept her from performing the duties of a full time letter carrier between July 2000 and December 2001.

2001, the Postal Service had reassigned Plaintiff to a full-time, 40 hour-a-week job that fell within her limited capacity.  Hawthorne Transcr. 37.  In this position, Plaintiff handled nixie mail, code mail, express mail, wrote up and delivered certified mail and collected mail from the carriers.  Id.  Finally, despite her injuries, Plaintiff was not prevented from performing household chores, driving, walking, thinking, reading or caring for herself.  Id. at 111-113.  For these reasons, the Court finds that Plaintiff was not disabled within the meaning of the Rehabilitation Act.

However, even if Plaintiff could somehow establish that she was disabled for purposes of the Rehabilitation Act, Plaintiff cannot succeed on the remaining prongs of the test.  Specifically, Plaintiff has not made any showing that she was qualified to perform the essential functions of a 204B position, nor has she established that she could have been reasonably accommodated in that position.  Moreover, the USPS had already accommodated Plaintiff's injuries by assigning her to a limited duty position well before she requested a 204B position.  Finally, as discussed above, Defendants have established significant non-discriminatory reasons for not recommending Plaintiff for the position.  Thus, regardless of whether Plaintiff's injuries qualify as a "disability", she would still not have been selected for a job as a 204B supervisor.

## III.  CONCLUSION

For the reasons discussed herein,  Defendant's Motion for Summary Judgment  is GRANTED. An appropriate order will follow.

Dated: January 30, 2006                              /s/ Freda L. Wolfson
                                                     Honorable Freda L. Wolfson
                                                     United States District Judge

12